# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CITYSCAPES INTERNATIONAL**
**REALTY GROUP OF LONGBOAT KEY,**
**LLC, n/k/a ELITE REAL ESTATE**
**PROPERTIES, LLC, and DAVID**
**MCLAUGHLIN,**

    **Plaintiffs,**

v.                                          Case No.  8:11-cv-876-T-30TGW

**CCS-BEL MARE, LLC, PETER A. WELLS,**
**MARCEL ARSENAULT, REAL CAPITAL**
**SOLUTIONS, LLC, and CONDO CAPITAL**
**SOLUTIONS, LLC,**

    **Defendants.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 20) and Plaintiffs' Memorandum in opposition (Dkt. 21). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted to the extent that a more definite statement of Plaintiffs' claims is necessary.

## BACKGROUND[1]

At its essence, this case is about a real estate commission to which Plaintiffs believe they are entitled based on their alleged procurement of the "Bel-Mare Project." From late 2008 through 2009, Plaintiffs assisted "Defendants" and individual J.H. Massirman and his companies Rivergate Companies, LLC and Rivergate Residential (Massirman/Rivergate), with the purchase of distressed condominium projects. The original developer of the Bel-Mare Project (also referred to as the "Subject Property") was in default under its loan obligations and the foreclosure process had begun. During this period of time, Plaintiffs and Defendants agreed that Plaintiffs would receive a real estate commission if Defendants or Massirman/Rivergate (who are not parties to this action) purchased any of the projects brought to them by Plaintiffs.

At some point during this "working relationship," Plaintiffs forwarded an Exclusive Buyer Broker Agreement to Rivergate Residential and Defendant Condo Capital Solutions, LLC dated April 4, 2009. The agreement was never executed by any Defendant. In July and in September 2009, Letters of Intent to purchase projects brought by Plaintiffs were submitted by Rivergate Companies, LLC (which is not a party to this action) and Arsenault-Florida, LLC, joint venture (which is not a party to this action). These Letters of Intent named Plaintiffs as the broker to be paid by the buyer.

---

[1] The following facts are taken exclusively from Plaintiffs' amended complaint (Dkt. 15).

During the third quarter of 2009, the price of the Subject Property was reduced to an amount that began to make business and financial sense to "Defendants" and Massirman/Rivergate. Accordingly, Massirman/Rivergate informed Plaintiffs that they would need to bring in the "money guys" to also review the Subject Property and to give their approval to make an offer. Subsequently, Plaintiffs were put in direct contact with Defendants Peter A. Wells, Marcel Arsenault, Real Capital Solutions, LLC, and Condo Capital Solutions, LLC. Plaintiffs sometimes refer to these Defendants as "Buyers."

Thereafter, in 2009, Plaintiffs began direct discussions with the Buyers, including coordinating meetings, inspections, and site visits to the Subject Property. Plaintiffs also provided the Buyers with all of the information necessary to evaluate the Subject Property. Also during this time, Plaintiffs performed their own "due diligence" of the Buyers, which included a visit to the website of Defendant Condo Capital Solutions, LLC. The website contained a solicitation for Brokers to bring deals to the "Buyers," and they will be paid a real estate commission. Specifically, the solicitation included: "Bring your deals to CCS, you Expect: To be protected on your commission; To deal with buyers who act quickly and decisively; Buyers who have over $100 million of their own capital available."

Subsequent to the meeting between Plaintiffs and the Buyers in November 2009, Massirman/Rivergate drafted a Letter of Intent to Purchase ("LOI") and tendered the LOI to the lender of the Subject Property. Plaintiffs were named as the broker. However, "unbeknownst to Massirman/Rivergate and to Plaintiffs," the Buyers had submitted their own

LOI for the same purchase price with more favorable terms to the lender. The Buyer's LOI was accepted by the lender. The Buyers actively concealed the fact that they submitted a competing LOI.

On December 29, 2009, "Defendant Buyers" purchased the Subject Property by and through an Assignment of Certificate of Sale. Plaintiffs were not paid a commission and the following litigation ensued. Plaintiffs' amended complaint includes claims of procuring cause, violation of Florida's false advertising statute, and breach of oral contract.

## STANDARD OF REVIEW

A court may require a more definite statement of a pleading where the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e).

## DISCUSSION

As Defendants point out, Plaintiffs' amended complaint is rife with ambiguity and confusion as to which Defendant committed which act. At times, Plaintiffs refer to Defendants as "Defendants," "Defendant," "Buyer," "Buyers," and "money guys." Also, Plaintiffs sometimes reference "Plaintiffs" and then other times state "Plaintiff," without identifying which Plaintiff is being discussed. Moreover, the amended complaint references individuals and entities who are not parties to this action.

With respect to the procuring cause claim, although Plaintiffs have set forth numerous facts about their involvement with the procuring of the Subject Property, there are no details

as to each Defendant's involvement. Plaintiffs allege that they sent an Exclusive Buyer Broker Agreement to Defendant Condo Capital Solutions, LLC ("CCS"), which was never executed. It appears that CCS had knowledge of the instrumentality of Plaintiffs in procuring the sale. However, it is entirely unclear how the other Defendants were involved other than vague allegations regarding the "money guys" and Plaintiffs' communications with the "Buyers" in November and December of 2009. Defendants should not be lumped together in this manner. Rather, Plaintiffs need to identify each Defendant, individually, and explain how Plaintiffs brought the individual Defendant and the other relevant parties together. Plaintiffs also must allege what was discussed with each Defendant about Plaintiffs' entitlement to the commission.

Here, Plaintiffs state in a conclusory fashion that "it was agreed to by and between Plaintiffs and Massirman/Rivergate and Defendants that Plaintiffs would receive a real estate commission should Massirman/Rivergate and/or Defendants purchase any of the projects brought to them by Plaintiffs." This is insufficient to establish each Defendant's liability under the procuring cause theory. And, as Defendants' point out, if only Defendant CCS-Bel Mare, LLC purchased the Subject Property and Plaintiffs' continuous negotiations were solely with CCS-Bel Mare, LLC, there is no logical or legal basis for including the four other named Defendants in this claim.

For these same reasons, Plaintiffs must amend their breach of oral contract claim. Again, it is entirely unclear how each individual Defendant was a party to the oral contract.

Finally, Plaintiffs' claim for violation of Florida's false advertising statute, Section 817.41, must be dismissed because Plaintiffs fail to allege that Defendants were trying to sell any property or service to the general public. *See* Fla. Stat. §817.40(5). While the CCS website may be of some evidentiary value, the timing of the events as alleged in the amended complaint demonstrates that Plaintiffs could not have been induced by the website's purported "offer" to pay a real estate commission. Plaintiffs allege that they began their discussions with Defendant CCS in late 2008/early 2009 and sent an Exclusive Buyer Broker Agreement to Rivergate Residential and Defendant CCS on April 4, 2009, which was <u>before</u> Plaintiffs alleged they visited CCS' website. Additionally, it is unclear how the other Defendants would be liable under section 817.41, because the purported advertisement or website page was alleged to have been published on CCS' website.

## **CONCLUSION**

In sum, Plaintiffs' amended complaint is dismissed without prejudice to Plaintiffs to amend their claims to provide a more specific statement as to each Defendant's involvement and to state a claim as set forth herein.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 20) is GRANTED to the extent stated herein.

2.  Plaintiffs shall amend their complaint within fourteen (14) days from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on July 7, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-876.mtdismiss20.frm